NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3348
_____

UNITED STATES OF AMERICA

v.

ERIC WALLACE, a/k/a Marshall Gilmore

Eric Wallace,
                    Appellant

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-09-cr-00534-001)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit LAR 34.1(a)
September 19, 2011
_____

Before:  AMBRO, CHAGARES, and ROTH, Circuit Judges

(Opinion filed:   November 10, 2011)
_____

OPINION
_____

AMBRO, Circuit Judge

Appellant Eric Wallace appeals the District Court's denial of his motion to

suppress evidence of a firearm found in his possession.  We affirm the judgment of the

District Court.

As we write solely for the parties, we recite only those facts necessary to our decision. On February 18, 2009, at approximately 7:30 p.m., Philadelphia Police Officers Paul Gimbel and John Leinmiller were on a routine patrol when they observed a van illegally parked at an intersection in the Germantown neighborhood of Philadelphia. The van was in a high-crime area known for drug trafficking activity.

Officer Gimbel approached the driver's side of the van while shining his flashlight into the van. He identified four people, one in the front passenger seat and three in the rear seat. Wallace was sitting in the middle position of the rear seat.

As he approached the van, Officer Gimbel observed Wallace reaching toward his "waistband area," as though he either was going into or adjusting his waistband. Gimbel immediately told everyone in the van to stop moving. After issuing the command, he observed Wallace move briefly. Gimbel notified Officer Leinmiller, who was approaching the passenger side of the van, that Wallace was reaching for something. Because he believed Wallace was ignoring his command, Gimbel opened the driver's side door of the van and entered the van. Wallace's hands were at his waist and the other two passengers sitting in the rear seat both had their hands up. While ordering the passengers to keep their hands still, Gimbel placed his hands on top of Wallace's hands and lifted them away from the waist area. Gimbel patted down Wallace's waist area around the belt line and immediately felt a hard, metal object. He recovered a revolver loaded with six live rounds of ammunition.

2

Wallace was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). After losing his motion to suppress the revolver, he pled guilty to the indictment while preserving his right to appeal the denial of his suppression motion. The District Court sentenced Wallace to 180 months' imprisonment, five years of supervised release, a $500 fine, and a $100 special assessment. Wallace then filed a timely notice of appeal.[1]

On appeal, Wallace argues that Officer Gimbel lacked reasonable suspicion to justify a frisk for weapons under *Terry v. Ohio*, 392 U.S. 1 (1968). *Terry* allows an officer to "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30).[2] The scope of a valid *Terry* stop includes a pat-down search for weapons when an officer has a reasonable belief that a person is armed and dangerous. *Terry*, 392 U.S. at 27. The officer does not need to be certain that the person is armed. Rather, "the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others [is] in danger." *Id.* The determination is based on a totality of the circumstances, recognizing that an officer may have more experience and training "to make inferences

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We review "the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

[2] Before the District Court, Wallace contended that the officers did not have a valid legal basis to approach the van because a parking violation does not constitute a traffic violation for purposes of a *Terry* stop. Wallace has not pursued this claim on appeal.

from and deductions about the cumulative information available" than an untrained person. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

We have held that when an officer observes suspicious behavior he reasonably believes is intended to conceal a weapon, he is justified in searching for the weapon. *See United States v. Robertson*, 305 F.3d 164, 170-71 (3d Cir. 2002). For example, in *United States v. Moorefield*, 111 F.3d 10 (3d Cir. 1997), officers ordered the defendant to remain in the car with his hands visible, after which he appeared to shove something toward his waist. *Id.* at 11-12. We held that the defendant's "furtive hand movements and refusal to obey the officers' orders constituted suspicious behavior." *Id.* at 14. We stated that the defendant's "behavior embodied the kind of specific, articulable facts that *Terry* contemplates and, therefore, warranted a pat-down search for weapons." *Id.*

Wallace's behavior likewise warranted Officer Gimbel's pat-down search for weapons. As he approached the van, Gimbel observed Wallace reaching for something near his waist, prompting him to instruct Wallace and the other three passengers to stop moving. When Wallace did not do so, Gimbel reasonably could have believed Wallace was concealing a weapon. In addition, the van was parked illegally in a high-crime area known for drug trafficking. *See Wardlow*, 528 U.S. at 124. It was dark outside, limiting Gimbel's ability to observe Wallace's movements and heightening his sensitivity to Wallace's behavior. The van was occupied by four passengers, outnumbering Officers Gimbel and Leinmiller two to one. In this context, any doubt disappears that Gimbel reasonably could have suspected that Wallace was armed and dangerous, justifying a pat-down search of Wallace.

4

For these reasons, we affirm the judgment of the District Court.